# William H. Kizer et al., Appellants, v. A. C. Moffet, Appellee.

APPEALS AND ERRORS—*when findings of chancellor not disturbed.* Findings of fact by a chancellor will not be disturbed on review as against the weight of the evidence unless clearly and manifestly so.

Bill in equity. Appeal from the Circuit Court of Cass county; the Hon. GUY WILLIAMS, Judge, presiding. Heard in this court at the May term, 1911.    Affirmed.    Opinion filed October 9, 1911.    *Certiorari* denied by Supreme Court (making opinion final).

THOMAS L. JARRETT and J. J. NEIZER, for appellants.

ROBERT H. PATTON, for appellee.

MR. JUSTICE FROST delivered the opinion of the court.

This is an appeal from a decree of the Cass County Circuit Court dismissing upon a full hearing appellants' bill in equity brought against the appellee to reform certain deeds. Appellee owned certain lands in Cass county situated in what is known as the Meredosia Lake Drainage & Levee District, and appellant, George R. Caldwell, owned some farm lands in Sangamon county. Appellant, William H. Kizer, owned some real estate in the city of Springfield. On August 2, 1909, all of the appellants except Mary O. Kizer, entered into a written contract with appellee whereby appellee agreed to convey to George R. Caldwell 110 acres of his land east of the levee, and the balance of his land, to William H. Kizer. Appellants, George R. and Nettie A. Caldwell, agreed to execute a mortgage of $2,500 to appellee on the lands to be conveyed to them, and appellants, William H. Kizer and Mary Kizer, his wife, were to execute a mortgage of $5,100 to appellee, on the lands to be conveyed to them. The contract contained the following provision: "All deeds to be drawn subject to the taxes and assessments of the year 1909." On August 16, 1909, in pursuance of the agreement, appellee executed and delivered a deed to William H. and Mary Kizer, of the 110 acres described in the contract, and also executed and delivered to George R. Caldwell, a deed of 110 acres of land, as provided in the contract. The description of the lands in both deeds referred to them as lying east of the levee of the Meredosia Lake and Drainage District and each deed contained the following provisions: "Subject to the taxes for 1909 and all levee and drainage assessments which grantee assumes and agrees to pay."

In the year 1903 the Meredosia Lake Drainage & Levee District was organized and benefits were assessed against the lands conveyed by appellee in the foregoing deeds of $4,695.45, as stated in appellants' bill herein, payable in ten annual installments. Appellants claim they were ignorant of any levee or drainage assessments and that their understanding of the word "assessment," as mentioned in the contract, had reference only to levee maintenance assessments yearly made and they charge that the changed provision in the deeds whereby they assume all levee and drainage assessments, was made fraudulently by appellee acting in collusion with the attorney who drew the deeds; that they were deceived by appellee as to the true condition of the title to the lands they received and that they are entitled, either on the ground of fraud or mistake, to have the deeds reformed, conformably to the contract.

So far as this case is to be determined, upon the questions of fact we would hesitate to interfere with the decree of the circuit court unless it appears that the same is against the manifest weight of the evidence.

The testimony of E. D. Henry, an attorney employed by appellant Kizer, shows that he took appellee's abstracts and examined them and gave an oral opinion to Mr. Kizer as to the title and told him the title was good with the exception that there were some drainage taxes against the land, the amount of which he could not tell. After the deeds were drawn and before they were delivered, Mr. Schnepp, an attorney at law of Springfield, who had been Mr. Kizer's attorney, was called into Mr. Piper's office, where delivery of the deeds took place, and consulted with reference to them. Mr. Schnepp was in a great hurry to get away, as he said, and did not give the matter very close attention and did not have time to read the contract. Mr.

Schnepp testifies that his recollection was that Mr. Henry at the time stated the deeds contained the same provision as the contract. Mr. Henry testifies that in response to Mr. Schnepp's question, whether the deeds were drawn in accordance with the terms of the contract, he told him they were, "with the exception of the clause concerning the drainage assessments, practically the same."

It is admitted the abstracts of appellee's lands showed original assessments for 1903 and 1905 and a petition for an additional assessment filed April 6, 1909. A. L. Hamilton, an attorney at law, who represented appellee and drew the contract, testifies that Kizer and Caldwell were to assume the levee assessments and that Mr. Moffet was to pay up all the levee taxes and assessments that were due up to the time the trade was made; that Mr. Caldwell took the contract to his brother, who was a lawyer, for examination, and that the clause in the contract as to taxes and assessments was inserted at Caldwell's suggestion; that he discussed the details with Kizer with reference to the assessment or drainage levy, in his office; that Mr. Henry brought the deeds to Mr. Piper's office shortly before noon; that they were not right for some reason and Caldwell and Kizer went to hunt up Mr. Schnepp to look over the deeds and that there was some talk about these assessments and Mr. Moffet said they could take the deeds as they were or not.

Mr. C. C. Courtney testifies that when appellee brought the deeds, they (referring to Caldwell and Kizer) objected to some of the levee matters written in the deeds. Appellee testifies the first time anything was mentioned in his presence concerning taxes or assessments was when the contract was drawn; that Caldwell and Kizer were to pay the taxes and levee assessments coming due after 1908 and that he was to pay all that fell due before 1909; that Mr. Caldwell

did not wish to accept his deed without knowing what the levee tax and assessments were going to be and that Mr. Kizer went out and hunted up his attorney, Mr. Schnepp; that Mr. Schnepp asked Mr. Henry if these deeds were drawn in accordance with the contract and Mr. Henry said they were, with the exception of the wording of the assessments with regard to drainage; that when it was near his train time Mr. Caldwell was still objecting to the assessments and he told him there was a part of the old levy that was not paid for; that there was maintenance tax to keep it up and that he had signed a contract to sell a strip of land off next the levee for its rebuilding and that if the strip was taken Caldwell and Kizer would receive pay for it, and that he, Moffet, said to them (referring to Kizer and Caldwell), that they could accept the deeds the way they were or let them alone. Caldwell and Kizer deny any knowledge of levee assessments or the petition and testify they supposed that by the word "assessment" reference was made solely to maintenance tax. In this they are corroborated by the witness Piper. Appellee insists that the word "assessment" as used in the contract includes all installments of levee assessments then actually levied against the land.

Without deciding this point we think the decree ought not to be disturbed. There was sufficient evidence to support the finding that appellants, Caldwell and Kizer, knew of the levee assessments when the deeds were delivered. The attorney employed by them knew of the existence of these assessments. The deeds were submitted to Caldwell and Kizer and they had abundant time to examine them and call in additional counsel for that purpose. They knew the lands they were getting were in a drainage and levee district and the mortgages they gave to Mr. Moffet were made subject to drainage and levee assessments.

The learned chancellor who heard this case had a much better opportunity than we have of weighing the testimony and we can see no sufficient ground to disturb his findings.    The decree will be affirmed.

*Affirmed.*

APPEALS AND ERRORS—*when findings of chancellor not disturbed.*
Findings of fact by a chancellor will not be disturbed on review as against the weight of the evidence unless clearly and manifestly so.

